IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| SHAKIRAT MODUPE BARUWA | : |
|  | : |
| v. | : Civil Action No. DKC-09-1278 |
|  | : |
| RICHARD CATERISANO, et al. | : |
|  | : |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this naturalization case is a motion for summary judgment filed by Respondents Richard Caterisano, District Director of the United States Citizenship and Immigration Services ("USCIS"), et al. (Paper 13).  The court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary.  For the reasons that follow, Respondents' motion will be granted.

I.   **Background**

Petitioner Shakirat Modupe Baruwa is a native of Nigeria and has been a lawful permanent resident of the United States since April 2000.  She filed an application for naturalization on April 13, 2007 with the United States Citizenship and Immigration Services ("USCIS").  USCIS denied the petition on the ground that Petitioner did not possess the requisite "good moral character" such that Petitioner could be divested of her permanent resident status and removed to Nigeria.  On August 19,

2008, Petitioner requested a hearing on the Decision under Section 336 of the Immigration and Naturalization Act and submitted a brief in support of her Application. An interview was conducted on March 16, 2009 by a USCIS examining officer. Although Petitioner initially filed a complaint in this court prior to the issuance of a final decision by USCIS, the final decision rejecting Petitioner's application has since been filed.

Under 8 U.S.C. § 1421(c), Petitioner has the right to seek a de novo judicial review of the denial of her application for naturalization in this court. "[T]he court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application." *Id.*

The problematic aspect of Petitioner's otherwise ostensibly acceptable naturalization application is an incident that occurred in 2005, only two years before she applied for naturalization. At the time of the incident, Petitioner was working as a nursing assistant or aide at the Fairfield Nursing and Rehabilitation Center, an assisted-living home in Maryland. On January 7, 2005, Petitioner was assigned to wash and change a patient who suffered from Alzheimer's disease and dementia. Some dispute exists as to exactly what occurred, but apparently

Petitioner struck the patient several times when the patient would not allow herself to be washed.[1]

On January 13, 2005, Petitioner was charged in the District Court of Maryland for Anne Arundel County. (Paper 13, at 2). Petitioner followed the advice of her criminal defense attorney and pled guilty to abuse of a vulnerable adult under Md. Code Ann., Crim. Law § 3-605 in the second degree on May 3, 2005.[2] She was granted probation before judgment and placed on

---

[1] This court need not determine the exact facts of the underlying incident (Petitioner and Respondents have differing stories) because no dispute exists that Petitioner pled guilty to a crime under Md. Code Ann., Crim. Law § 3-605.

[2] Petitioner claims that she did not realize, and was not informed by her lawyer of, the potential consequences of her guilty plea upon her immigration status. Petitioner says that she did not realize that her guilty plea could deprive her of the ability to become an American citizen. Although it is a tangential issue in this case, the Supreme Court has recently addressed the duty of a defense attorney to inform a client whether a guilty plea would affect the client's immigration status in the context of a claim of ineffective representation. In *Padilla v. Kentucky*, 130 S.Ct. 1473 (2010), the Court determined that "[b]ecause counsel must inform a client whether his plea carries a risk of deportation, Padilla has sufficiently alleged that his counsel was constitutionally deficient." The Court did not address whether Padilla was ultimately entitled to post conviction relief, however, as it did not reach the question of whether he was prejudiced. It also did not establish whether the new rule would apply retroactively. Neither the Board nor this court can go behind a criminal judgment to consider any collateral attack on a conviction. *Ugwu v. Gonzales*, 242 Fed.Appx. 917 (4th Cir. 2007)(citing *Abiodun v. Gonzales*, 461 F.3d 1210, 1217 (10th Cir. 2006), *Olivera-Garcia* v. INS, 328 F.3d 1083, 1087 (9th Cir. 2003), *Trench v. INS*, 783 F.2d 181, 184 (10th Cir. 1986) and *Zinnanti v. INS*, 651 F.2d 420, 421 (5th Cir. 1981)).

supervised probation for a year.  A fine of $5000 was imposed, but $4,555 was suspended.  The case was closed on May 3, 2006 at the end of her year of probation, during which she was compliant with all the conditions of probation.  (Paper 13, at 3).

USCIS determined that Petitioner did not demonstrate that she was a person of "good moral character" for the five years prior to the filing of her application for naturalization because the conviction was for a crime involving "moral turpitude" that precludes a finding of good moral character. (Paper 13, Attach. 3).

**II.  Motion for Summary Judgment**

**A.    Summary Judgment Standard**

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(f); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).  In other words, if there clearly exists factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate.  *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See Scott v. Harris*, 127 S.Ct. 1769, 1774 (2007); *Emmett,* 532 F.3d at 297. A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. *Celotex Corp.*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id*. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 254; *Celotex Corp*., 477 U.S. at 324. "A mere scintilla of proof, however, will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50. (citations omitted).

**B. Analysis**

Resolution of this case turns on whether Petitioner is able to prove that she possesses the good moral character required by

law to become a U.S. citizen.  In a naturalization proceeding,

"the burden is on the alien applicant to show his eligibility

for citizenship in every respect," and any "doubts should be

resolved in favor of the United States and against the

claimant."  *Berenyi v. Dist. Director*, 385 U.S. 630, 637

(1967)(internal marks and citations omitted).  In addition to

establishing certain residency requirements, which are not

contested here, Petitioner must demonstrate that she is a person

"of good moral character, attached to the principles of the

Constitution of the United States, and well disposed to the good

order and happiness of the United States."   8 C.F.R. §

316.2(a)(7), 8 U.S.C. § 1427(d).

Petitioner must show "good moral character" for the five

years immediately preceding the filing of her application, and

from the date the application is filed up to the date she is

admitted for citizenship.  *United States v. Dang*, 488 F.3d 1135,

1139 (9th Cir. 2007).  The court must "evaluate claims of good

moral character on a case-by-case basis," considering certain

statutory restrictions and "the standards of the average citizen

in the community of residence."  8 C.F.R. § 316.10(a)(2).

Congress established that some conduct necessarily

precludes a finding of "good moral character," including the

commission of a crime "involving moral turpitude," if the person

admits to or is convicted of the crime. *See* 8 U.S.C. §

1101(f)(3), which cites to § 1182 providing that

> Except as provided in clause (ii), any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of . . . a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime . . . is inadmissible.

8 U.S.C. § 1182(a)(2)(A)(i). Furthermore, 8 U.S.C. § 1101(f)(9)

contains a "catch-all" provision: "The fact that any person is

not within any of the foregoing classes shall not preclude a

finding that for other reasons such person is or was not of good

moral character." 8 U.S.C. § 1001(f)(9). Pursuant to the

authority granted by Congress, the Attorney General issued 8

C.F.R. § 316.10, which provides, in pertinent part, that the

applicant "shall be found to lack good moral character if during

the statutory period the applicant . . . [c]ommitted one or more

crimes involving moral turpitude, other than a purely political

offense, for which the applicant was convicted, except as

specified in section 212(a)(2)(ii(II) of the Act." 8 C.F.R. §

316.10(b)(2)(i).[3]

---

[3] In an alternate section, the regulations also provide that an applicant "shall be found to lack good moral character if, during the statutory period, the applicant . . . [c]ommitted unlawful acts that adversely reflect upon the applicant's moral character," unless the applicant can establish extenuating circumstances. 8 C.F.R. § 316.10(b)(3)(iii).

Respondents argue that summary judgment should be granted in their favor because, for two reasons, Petitioner lacks the "good moral character" required for naturalization. First, Petitioner struck an elderly Alzheimer's patient who was under her care, and this act can be considered an "unlawful bad act" that "reflects adversely" upon her character. Second, she pled guilty to the crime of "abuse of a vulnerable adult," which is a crime of moral turpitude, according to Respondents.

Petitioner argues that because of the extenuating circumstances involved in the situation she should not be found to have committed an unlawful bad act that reflects adversely upon her. (Paper 14, at 6-7). She also argues that Md. Code Ann., Crim. Law § 3-605 is not a crime involving moral turpitude. (*Id.* at 10-11).

**1.   Analysis of Petitioner's Conviction under Md. Code Ann., Crim. Law § 3-605**

Although there are no statutorily established elements for a crime involving moral turpitude, over the years courts in various circuits have consistently used similar terms to define such a crime. The Fourth Circuit has defined moral turpitude as

> a nebulous concept, which refers generally
> to conduct that shocks the public conscience
> as being inherently base, vile, or depraved,
> contrary to the rules of morality and the
> duties owed between man and man, either
> one's fellow man or society in general.

*Medina v. United States*, 259 F.3d 220, 227 (4th Cir. 2001).

Other courts have used similar sentiments. *Partyka v. Attorney General of the U.S.*, 417 F.3d 408, 413 (3rd Cir. 2005)(citing the Board of Immigration Appeals' ("BIA") definition of moral turpitude as "conduct that is inherently base, vile, or depraved, contrary to the accepted rules of morality and the duties owed other persons, either individually or to society in general."); *Hyder v. Keisler*, 506 F.3d 388, 391-2 (5th Cir. 2007)(adopting the BIA's definition from an earlier case in which they cited it, *Hamdan v. I.N.S.*, 98 F.3d 183, 186 (5th Cir. 1996): "Moral turpitude refers generally to conduct that shocks the public conscience as being inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general. Moral turpitude has been defined as an act which is per se morally reprehensible and intrinsically wrong. . . .").

Some courts have also included the requirement of a "vicious motive or a corrupt mind." *Hyder*, 506 F.3d at 388(citing *Hamdan*). *See also Partyka*, citing *Matter of Franklin*, 20 I. & N. Dec. 867, 868 (BIA 1994)(finding that "[a]

longstanding test employed by the BIA to determine the existence of moral turpitude, which we find persuasive in a removal proceeding, asks 'whether the act is accompanied by a vicious motive or a corrupt mind.'"); *Maghsoudi v. INS*, 181 F.3d 8, 14 (1st Cir. 1999)(citing the Fifth Circuit's definition of "moral turpitude" including a test to determine if a crime involves moral turpitude that examines whether a vicious motive or corrupt mind exists.)

Both parties agree that the court may look only at the statutory text and not the actual circumstances in this case to determine whether the offense was a crime of moral turpitude. (Paper 14, at 12; Paper 13, at 12). Indeed, court cases across the circuits have made it clear that whether a crime is one of moral turpitude must be answered by examining the statute in question. Specifically, whether a crime involves moral turpitude "is determined by the statutory definition or by the nature of the crime not by the specific conduct that resulted in the conviction." *McNaughton v. INS*, 612 F.2d 457, 459 (9th Cir. 1980). The initial inquiry before the court is thus whether, by its definition, the crime to which Petitioner pled guilty necessarily involves moral turpitude.

Petitioner pled guilty to Md. Code Ann., Crim. Law § 3-605 which reads:

> > (1) A caregiver, a parent, or other person who has permanent or temporary care or responsibility for the supervision of a vulnerable adult may not cause abuse or neglect of the vulnerable adult.
>
> > (2) A household member or family member may not cause abuse or neglect of a vulnerable adult

Md. Code Ann., Crim. Law § 3-605 (describing "Abuse or neglect of a vulnerable adult in the second degree").[4] The maximum penalty for second-degree abuse or neglect is "imprisonment not exceeding 5 years or a fine not exceeding $5,000 or both." *Id.* The terms "abuse" and "neglect" are defined in Md. Code Ann., Crim. Law § 3-604. "Abuse" means the sustaining of physical pain or injury by a vulnerable adult as a result of cruel or inhumane treatment or as a result of a malicious act under circumstances that indicate that the vulnerable adult's health or welfare is harmed or threatened. Md. Code Ann., Crim. Law § 3-604 (a)(2)(i).

---

[4] Both parties proceed on the premise that the court must look at both prongs of the statute – for both neglect and abuse. Petitioner pled guilty to and was convicted of "abuse" of a vulnerable adult only – not neglect. (Paper 13, at 10, 13; Paper 14, at 10, 13). Any arguments regarding the neglect language of the statute are therefore largely irrelevant. Even if her conviction was unclear from the court records or the USCIS denial, however, this would avail her nothing because the definition for "neglect" in the statute includes morally turpitudinous aspects as it requires "intentional" acts.

> "Neglect" means the intentional failure to
> provide necessary assistance and resources
> for the physical needs of a vulnerable
> adult, including: [] food; [] clothing; . .
> . .

Md. Code Ann., Crim. Law § 3-604(a)(7)(i).  "Vulnerable adult"

is defined as "an adult who lacks the physical or mental

capacity to provide for the adult's daily needs."  Md. Code

Ann., Crim. Law § 3-604(a)(10).  Petitioner qualified as a

"caregiver" because she was "a person under a duty to care for a

vulnerable adult because of a contractual undertaking to provide

care."  Md. Code Ann., Crim. Law § 3-604(a)(3).

Respondents argue that the decision of USCIS that these

sections describe a crime involving moral turpitude should be

upheld.  They argue that

> [g]enerally accepted moral standards require
> that a vulnerable adult who can't care for
> herself be treated by her caretaker with
> care and respect – and abusive or neglectful
> conduct directed towards such a person is
> contrary to those moral standards.  Any
> violation of this statute constitutes a
> crime of moral turpitude because such
> conduct is base, depraved and contrary to
> accepted moral standards.

(Paper 13, at 13).  Respondents also cite an unpublished case

decided by the United States Court of Appeals for the Tenth

Circuit, in which the court examined an Oklahoma statute for

caretaker abuse or neglect, Okla. Stat. tit. 21, § 843.1 (1999),

and upheld the decision of the BIA that it was a crime involving

moral turpitude.  *Ofosuhemaa v. Ashcroft*, 68 Fed. Appx 177 (10th Cir. 2003).

Petitioner argues that the Tenth Circuit case is inapposite because the conviction was for a felony and was for first degree abuse or neglect.  She argues that she was charged with a misdemeanor in the second degree.  She also points out that the Tenth Circuit opinion is not binding precedent for this court. Petitioner urges comparison of the Maryland statute in question to statutes for simple assault, a crime which many courts have found does not involve moral turpitude.

Based on a simple reading of the language in the statute, Md. Code Ann., Crim. Law § 3-605 must be categorized as a crime involving moral turpitude.  A conviction requires a finding that physical pain or injury result from "cruel or inhumane treatment" or "a malicious act." Coupled with the fact that the actions must be taken by some type of caregiver (whether temporary or permanent) and be inflicted on a "vulnerable adult", the abuse described clearly evinces the type of base or vile behavior that other courts have found in reading various statutes.  Furthermore, although Petitioner claims it is denominated a misdemeanor under Maryland law, it is punishable by a sentence of up to five years which makes it a felony offense under federal standards.

In other contexts, courts have noted that the special relationship between the victim and the offender is critical to the finding of moral turpitude:

> It is the assailant's awareness of this special relationship and willful abuse of such relationship by the use of violence that demonstrates moral turpitude.

*Donley v. Davi*, 180 Cal.App.4th 447, 459, 103 Cal.Rptr.3d 1, 11 (Cal.App. 3d Dist. 2009).

The Maryland statute, thus, defines a crime of moral turpitude. Petitioner's guilty plea, within five years of her application for naturalization, precludes a finding of good moral character.

## 2. "Unlawful Bad Acts" Analysis

Because the court finds that the crime to which Petitioner pled guilty is one that involves moral turpitude, no analysis of Respondents' alternative argument involving the "unlawful bad acts" analysis, or any extenuating circumstances, is necessary.

## III. Conclusion

For the foregoing reasons, Respondents' motion for summary judgment will be granted. A separate Order will follow.

                                                    /s/
DEBORAH K. CHASANOW
United States District Judge